UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
AUG 30 2016
RONALD A. GUZMAN, JUDGE
UNITED STATES DISTRICT COURT

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 14 CR 131-5 |
| v. | |
| IVAN KOTSELOV | Judge Ronald A. Guzman |

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, ZACHARY T. FARDON, and defendant IVAN KOTSELOV and his attorney, DARRYL GOLDBERG, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2. The indictment in this case charges defendant with three counts of wire fraud, in violation of 18 U.S.C. § 1343 (Counts 1, 6, and 18 of the indictment). The indictment also contains a forfeiture allegation.

3. Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

### Charge to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count 1 of the indictment, which charges defendant with wire fraud, in violation of 18 U.S.C. § 1343.

### Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charge contained in Count 1 of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3:

On or about October 28, 2011, at Norridge, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant IVAN KOTSELOV, for the purpose of executing a scheme to defraud, knowingly caused to be transmitted in interstate commerce certain signals, namely a communication between an ATM terminal in Norridge, Illinois, and a server located outside Illinois.

More specifically, beginning no later than May 2011 and continuing through at least September 2012, co-defendant Gheorgui Martov and others, including KOTSELOV, participated in a scheme to defraud. As part of that scheme, co-schemers sent ATM and debit card numbers, as well as the personal identification numbers ("PINs") associated with those numbers, to Martov. The card numbers and associated PINs had been fraudulently obtained, without the knowledge or consent

of the individuals to whom the numbers had been assigned. After receiving the card numbers and PINs, Martov distributed them to co-schemers in the Chicago area.

Martov and other co-schemers then encoded the debit and ATM card numbers onto the magnetic strip of credit cards, debit cards, or gift cards. Martov and his co-schemers used the encoded cards, and the associated PINs, to make cash withdrawals from ATMs in the Chicago area, a process known as "cashing out." Martov and his co-schemers often coordinated withdrawals in an effort to obtain as much money as possible before accounts were deactivated, reached daily withdrawal limits, or were depleted of funds.

Co-schemers who made withdrawals returned the vast majority of the proceeds to Martov. Martov then transferred some of those proceeds to the co-schemers who had supplied him with the card numbers and associated PINs.

At Martov's direction, KOTSELOV assisted in attempting to obtain cash using cards encoded with information from stolen credit and debit cards. On October 28, 2011, at approximately 3:02 p.m., Martov received a text message from one of his overseas card suppliers stating, "I will be ready in 40 minutes. It is only 2-3. Come on Skype." At approximately 3:18 p.m., in a recorded call, Martov told KOTSELOV that he would have "some work," meaning stolen card numbers from which he wanted to obtain funds, at about 4:00 p.m. KOTSELOV asked how many there would be, and Martov responded, "three." KOTSELOV agreed to do the cash out.

At approximately 3:56 p.m., KOTSELOV and Martov spoke over the phone again. During that call, Martov said that they had received only two cards because two would not be noticed.

At approximately 4:30 p.m., KOTSELOV traveled to Store B. located in Norridge, Illinois. At a Bank A ATM inside of Store B, KOTSELOV used cards containing the stolen card information provided by Martov to attempt to obtain cash. Immediately after attempting to obtain cash from the Bank A ATM inside Store B, KOTSELOV walked to Bank D and used the ATM at Bank D to attempt to obtain cash from cards containing the stolen card information provided by Martov.

At approximately 5:02 p.m., KOTSELOV and Martov spoke on the phone to discuss the results. KOTSELOV reported that he had obtained $640 from the cards. Two minutes later, Martov informed his card supplier, over the phone, that the cards were not working.

At the time of the offense, all Bank A ATMs communicated with servers located outside of Illinois immediately after a card was swiped through the ATM's card reader.

KOTSELOV's conduct contributed to actual losses to victims of approximately $47,000, of which KOTSELOV received approximately a little more than $5,000. KOTSELOV further acknowledges that, for the purposes of calculating loss under the United States Sentencing Guidelines: (a) the intended loss caused by acts committed, aided, and abetted by KOTSELOV, as well as the reasonably foreseeable acts of

4

others in furtherance of the scheme, based upon the default amount attributable to each access device, exceeded $250,000, but was less than $550,000; and (b) there were more than 10 victims of the acts committed, aided, and abetted by KOTSELOV, as well as the reasonably foreseeable acts of others in furtherance of the scheme.

## Maximum Statutory Penalties

7.  Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

    a.  A maximum sentence of 20 years' imprisonment. This offense also carries a maximum fine of $250,000. Defendant further understands that the judge also may impose a term of supervised release of not more than three 3 years.

    b.  Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court unless the Court determines that restitution is not applicable because the number of identifiable victims is so large as to make restitution impracticable or determining complex issues of fact related to the cause or amount of the victim losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process. The Court also may order restitution to any persons as agreed by the parties.

    c.  In accord with 18 U.S.C. § 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

8. Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

    a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2015 Guidelines Manual.

  b.  **Offense Level Calculations**.

    i.  The base offense level is 7, pursuant to Guideline § 2B1.1(a)(1).

    ii.  Because the amount of intended loss was more than $250,000, a 12-level enhancement applies, pursuant to Guideline § 2B1.1(b)(1)(G).

    iii.  Because the offense involved 10 or more victims, a 2-level enhancement applies, pursuant to Guideline § 2B1.1(b)(2)(A)(i).

    iv.  Because a substantial part of the fraudulent scheme was committed from outside the United States, a 2-level enhancement applies, pursuant to § 2B1.1(b)(10).

    v.  Because the offense involved the production or trafficking of any unauthorized access device, counterfeit access device, or authentication feature, a 2-level enhancement applies, pursuant to § 2B1.1(b)(11).

    vi.  Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a 2-level reduction in the offense level is appropriate.

vii. In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a 2-level reduction for acceptance of responsibility, the government will move for an additional 1-level reduction in the offense level.

c. **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

d. **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 22, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 41 to 51 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

e. Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to

conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

10. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

11. Each party is free to recommend whatever sentence it deems appropriate.

12. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum

penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13. Regarding restitution, the parties agree, pursuant to 18 U.S.C. § 3663(a)(c)(3), that restitution is not applicable because the number of identifiable victims is so large as to make restitution impracticable and determining complex issues of fact related to the cause or amount of the victim losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process.

14. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

15. After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the forfeiture allegation and remaining counts of the indictment, as to defendant.

### Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

16. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 14 CR 131.

17. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

18. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

    a. **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

        i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

        ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove

11

prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

   iii.  If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

   iv.  If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

   v.  At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

   vi.  At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii. At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

b. **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

19. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

20. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

13

21. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of 18 U.S.C. § 1001 or as a contempt of the Court.

22. For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in 26 U.S.C. § 6103(b).

### Other Terms

23. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

24. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which defendant is pleading guilty. The offense to which defendant is pleading guilty may constitute an "aggravated felony," as that term is defined in 8 U.S.C. § 1101(a)(43). Removal is presumptively mandatory for aggravated felonies. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the Court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his guilty plea may entail, even if the consequence is his automatic removal from the United States.

### Conclusion

25. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

26. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

27. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

28. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

29. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 8/30/16

_____
ZACHARY T. FARDON
United States Attorney by LJBarsella

_____
IVAN KOTSELOV
Defendant

_____
SCOTT M. EDENFIELD
Assistant U.S. Attorney

_____
DARRYL GOLDBERG
Attorney for Defendant